IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

NANCY S. WOODARD,

    Plaintiff,

v.                              Case No. 2:11-cv-1055
                               JUDGE GREGORY L. FROST
COMMISSIONER OF SOCIAL SECURITY,    Magistrate Judge Kemp

    Defendant.

## OPINION AND ORDER

    Plaintiff, Nancy S. Woodard, filed this action in order to obtain judicial review of a decision of the Commissioner of Social Security which denied her applications for disability insurance benefits and supplemental security income. This case is before the Court to consider the plaintiff's objections (ECF No. 20) to the Report and Recommendation of the Magistrate Judge which was filed on December 27, 2012 (ECF No. 19). The Commissioner has not responded to the objections. The Magistrate Judge recommended that the Court overrule plaintiff's statement of errors and enter judgment in favor of the defendant. For the reasons stated below, the Court **SUSTAINS** the plaintiff's Objections, **DECLINES TO ADOPT** the Magistrate Judge's Report and Recommendation, **SUSTAINS** the plaintiff's statement of errors, and **REMANDS** this case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

I.

    Because neither party has objected to the accuracy of the Report and Recommendation's summary of the testimony and the medical evidence, the Court adopts that summary and repeats here only those facts relevant to the resolution of plaintiff's objections.

    Plaintiff was 45 years old when the second administrative hearing was held on July 31, 2010. She is a high school graduate

who had worked as an assistant manager at a fast-food restaurant until she took time off to deal with knee problems, which culminated in her having a right knee replacement. She said that she had never fully recovered from knee problems, and that she must use ambulatory aids, including a scooter and a cane. She identified some other medical issues as well, including low back pain, nerve damage in her left wrist, diabetes, high blood pressure, and shoulder problems.

Medical evidence showed that plaintiff underwent several arthroscopic surgeries to her right knee before it was replaced in 2007. She was also treated for wrist problems and for diabetes. More recent medical reports showed improvement in the right knee after surgery but problems with the left knee. A consultative examiner, Dr. Smith, wrote a report in 2009 which limited plaintiff to seven hours of work activity (sitting, standing and walking) in a work day. Her treating physician, Dr. Franklin, had written reports in 2004 and 2006 containing that and other limitations inconsistent with working.

The Administrative Law Judge (ALJ) found that plaintiff had severe impairments involving both of her wrists, both of her knees, and her spine, and that she also suffered from obesity. He also found that she could perform a limited range of sedentary work as long as she could use a cane or scooter to walk. A vocational expert had testified that someone so limited could do jobs such as assembly patcher, weight tester, surveillance system monitor, and account clerk. The ALJ accepted that testimony and found that plaintiff was not disabled.

II.

If a party objects within the allotted time to a report and recommendation, the Court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. §

-2-

636(b)(1); see also Fed. R. Civ. P. 72(b). Upon review, the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The Court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" Ealy v. Comm'r of Soc. Sec., 594 F.3d 504, 512 (6th Cir. 2010) (quoting Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)); see also 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" Rabbers v. Comm'r of Soc. Sec., 582 F.3d 647, 651 (6th Cir. 2009) (quoting Bowen v. Comm'r of Soc. Sec., 478 F.3d 742, 746 (6th Cir. 2007)).

### III.

Plaintiff raised two issues in her statement of errors. She questions the ALJ's weighing of the medical evidence, and she argues that her credibility was not properly evaluated. She repeats these claims in her objections.

The most significant part of plaintiff's "treating source" argument relates to the evaluations done by Dr. Franklin. As plaintiff notes, in a report dated September 14, 2004 (which was about one-and-one-half years after the date on which plaintiff claimed she became disabled, and approximately three years before she had her knee replaced), Dr. Franklin evaluated her physical capacity. He noted that she had varying levels of pain and fatigue and that medication did not completely relieve those symptoms. He concluded that she could sit for six hours in a workday, but needed to get up and move around every thirty minutes, and that she could only stand or walk for an additional hour. She could rarely lift more than ten pounds, and also was very limited in the use of her left arm and hand. Finally, he thought she would miss more than three days a month due to illness. There is no question that these limitations, found at Tr. 496-503, are inconsistent with the performance of competitive work activity. In addition to filling out the form showing these restrictions, Dr. Franklin wrote a lengthy letter detailing his treatment of plaintiff for synovitis in the left wrist, which he did not think would improve, the fact that her back problems prevented prolonged sitting, and the episodic nature of knee symptoms including swelling and incapacitating pain. He concluded his letter by stating that "it is my medical opinion that her current disability status is predictable for at least the next five years and to be able to work competitively in a fast paced competitive environment it is highly unlikely for this lady." (Tr. 493). He made essentially the same assessment in 2006.

Under well-known principles of social security law, an opinion like this one, coming from a treating source who has a long-standing relationship with the patient, is entitled to be given considerable weight. See 20 C.F.R. §404.1527. If it is

not, the ALJ must have a good reason for rejecting it, and the ALJ must explain that reason in terms of the factors set out in §404.1527 with enough detail so that the claimant can understand why his or her treating doctor's conclusions are being rejected, and so a reviewing court can understand the basis of the decision. See Wilson v. Comm'r of Social Security, 378 F.3d 541 (6th Cir. 2004).

The ALJ who conducted the more recent hearing (the case was heard first by a different ALJ and then remanded by the Appeals Council) did not spend a great deal of time discussing Dr. Franklin's first report. In fact, the ALJ said that "[t]he various opinions of Dr. Franklin ... were discussed in detail in the prior decision" and that "the ... reasons given for not accepting his opinions were adequately discussed in the prior decision and incorporated by this reference ...." (Tr. 32). It is essential, therefore, to look at that prior decision.

The prior decision concluded that Dr. Franklin's opinion could not be given great weight because it was not well-supported by medically acceptable clinical and laboratory diagnostic techniques, and because it was not consistent with other evidence in the record. (Tr. 727-28). By the former statement, the ALJ apparently meant that Dr. Franklin included, in his narrative reports, some vocational considerations, because no other problems with his diagnostic techniques were mentioned. By the latter statement, the ALJ meant that Dr. Franklin's opinion was inconsistent with the opinions of the testifying medical expert and the state agency reviewers, none of whom, of course, had examined the plaintiff. (Tr. 728).

This rationale is problematic. The use of vocational factors by a physician to bolster a conclusion that a patient is disabled is, of course, something usually not within the doctor's area of expertise. However, as plaintiff points out in her

-5-

objections, when Dr. Franklin filled out his functional capacity assessment form, he did not use any vocational factors, and the form indicates limitations which preclude competitive work. The other part of the rationale - the inconsistency between Dr. Franklin's opinion and the views of the non-examining physicians - is questionable as well, not only because Dr. Franklin was the long-time treating source, but because in the later administrative decision, the ALJ found that plaintiff could not do light work. But the sources relied on by the first ALJ in discounting Dr. Franklin's opinion all said she could. Because the second ALJ specifically rejected the conclusions of the medical sources relied on by the first ALJ as inconsistent with the treating source's opinion, there is really nothing left of the first ALJ's rationale - or at least nothing the Court can review. This conclusion substantially undermines the second administrative decision to the extent that it relied heavily on the first decision in order to reject Dr. Franklin's September, 2004 opinion.

Because Dr. Franklin's 2006 opinion, which the second ALJ did discuss, is similar to the earlier opinion, it might be possible to find support for the ALJ's rejection of Dr. Franklin's views in that discussion. As to that opinion, the ALJ rejected the limitation on sitting, standing and walking for only seven hours in a work day, stating that Dr. Franklin did not provide an adequate explanation for his conclusion and that the difference between seven hours and eight hours seemed "arbitrary." (Tr. 32). The ALJ also characterized Dr. Franklin's comment that plaintiff could not "perform any kind of work on a daily basis that would be remunerative and that would involve 40 hours of labor" (Tr. 633) as being confined to some type of work beyond the sedentary level, stating that sedentary jobs are not "labor type jobs." He did not, however, comment on

several of the other functional limitations found in Dr. Franklin's June 8, 2006 questionnaire, including the need to get up and move around every thirty minutes for at least five minutes before resuming a sitting position and the likelihood that she would miss more than three days of work per month. The ALJ also did not incorporate either of these restrictions into his residual functional capacity finding, nor did he accept Dr. Franklin's view about how limited plaintiff was in using her left hand and arm; Dr. Franklin said that any use of this extremity for grasping, fine manipulation and reaching overhead was essentially precluded, but the ALJ, who said he took this portion of Dr. Franklin's report into account, found that plaintiff could handle and finger occasionally with her left hand (occasionally being defined in various Social Security Rulings as something a claimant can do for up to one-third of the work day, see SSR 83-14) and did not restrict her ability to reach overhead with her left arm. Thus, there is simply no explanation to support the ALJ's rejection of the treating source opinion on these specific points, and no way for the Court to know why the ALJ did not afford those portions of Dr. Franklin's opinion significant weight. That constitutes a violation of the "articulation rule" set out in Wilson, supra.

  The ALJ did, at the end of his discussion of Dr. Franklin's opinions, make a general statement to the effect that "[n]o deference is given to his assessment because the claimant's daily activities (cited below) do not reflect essentially total incapacity but appear to be quite consistent with at least sedentary work." (Tr. 33). Those activities included driving, tying her shoes, exercising in a pool, doing some household chores, watching television, and going to school activities with her children. The problem with this last statement, however, is that Dr. Franklin did not view plaintiff as totally

incapacitated. He thought she could work, either seated or standing for short periods, for a seven-hour day and lift up to ten pounds. What he thought she could not do was sustain this or any similar routine over a forty-hour week, and he thought she would miss too many days a month due to illness to keep a job. Her activities of daily living are as consistent with Dr. Franklin's assessment as they are with doing a reduced range of sedentary work, so this rationale cannot be used to support a blanket rejection of Dr. Franklin's views. Thus, not only did the ALJ not articulate fully his reasons for rejecting various limitations contained in Dr. Franklin's 2004 and 2006 reports, the reasons he did give do not find substantial support in the record, and that is true for the earlier ALJ as well.

There is support in the record, however, for the ALJ's finding that plaintiff's condition improved after her knee replacement. Clearly, some of Dr. Franklin's 2004 and 2006 opinions were based on the periodic swelling and pain which occurred in that knee which other surgeries or therapies had not been able to control. However, the only physician who examined her after that date, Dr. Smith, was somewhat equivocal on plaintiff's ability to work a full day. He also reported that she could only sit, stand and walk for a total of seven hours in a work day. He attributed her limitations to back and knee pain. The ALJ rejected that part of his opinion as being "inconsistent with the record as a whole" - although, as plaintiff points out, he did not say how - and as inconsistent with Dr. Smith's own findings. The only finding described as inconsistent, however, was Dr. Smith's observation that plaintiff walked with a slight limp on the left side, which the ALJ said was not borne out by the rest of the record. Most of the rest of the record, however, dealt with her condition before the knee replacement, when it was her right knee rather than the left which was more problematic.

The ALJ also does not explain how this single observation led him to discredit Dr. Smith's view about how long plaintiff could sit, stand or walk during a work day.

Finally, the ALJ does not appear to have considered whether plaintiff may have been disabled between her onset date and her knee replacement and any recovery period, which would extend into 2008, and until her new knee was fully functional. That possibility suggests itself from the record, and especially from Dr. Franklin's reports. The ALJ did not discuss it, and the ALJ made a single residual functional capacity finding that spanned the entire time period from onset date to decision date, some seven years. The medical records suggest this may be error.

All of these matters require a remand. The Court notes that plaintiff has also raised an issue about how her credibility was determined, and whether the ALJ complied with SSR 96-7p. Although this issue, by itself, might not justify a remand, the remand being ordered will give the ALJ another opportunity to demonstrate compliance with that regulation when discussing the significance of plaintiff's testimony about her symptoms.

## IV.

The Court, having reviewed the record *de novo*, determines that the ALJ's decision is not supported by substantial evidence and not in compliance with applicable regulations. The Court therefore **SUSTAINS** the Objections (ECF No. 20), **DECLINES TO ADOPT** the Magistrate Judge's Report and Recommendation (ECF No. 19), **SUSTAINS** the plaintiff's statement of errors (ECF No. 12), **REMANDS** the case to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four.

**IT IS SO ORDERED.**

/s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE